IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BARRY LaKEITH GRIGSBY | § | |
| v. | § | CIVIL ACTION NO. 6:20cv635 |
| L.H. DRISKELL, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
ON MOTION FOR SUMMARY JUDGMENT
BY NURSE CLOPE AND DENTAL ASSISTANT RICHIE

The Plaintiff Barry Grigsby filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The case has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

The remaining Defendants are Nurse Mary Jo Clope, Dental Assistant Lori Richie, and an officer named Bowen who has not been further identified. This Report concerns the motion for summary judgment filed by Nurse Clope and Dental Assistant Richie.

**I. Background**

Plaintiff's amended complaint (docket no. 11) is the operative pleading in the case. The Fifth Circuit has held that an amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading. *Montgomery v. Walton*, 759 F.App'x 312, 2019 U.S. App. LEXIS 880, 2019 WL 166016 (5th Cir., January 10, 2019), *citing King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Plaintiff's amended complaint does not refer to or adopt the original complaint, nor is his amended complaint verified under penalty of perjury.

Plaintiff contends that on July 2, 2019, he returned from the hospital after falling out of the top bunk. He saw Nurse Clope, whom he says refused to provide him with medication or medical assistance without examining him. Instead, he says that she told him there was nothing wrong with him and he was not going to get a bottom bunk. He also says that she told him she was aware that he was on trazadone and maybe he thought that was why he fell, but he was not going to get to see the doctor.

Plaintiff further alleged that Nurse Clope claimed to know who he was and that he had just come back from the hospital in Palestine, but that the hospital did not order any medication for him. Plaintiff asserted that he knew this was wrong because he saw the doctors in Palestine order muscle relaxers and pain medications for him. The doctor gave the medication to officers Swan, Cruz, and Bowen, but they lost it or withheld it from the infirmary.

A few days later, on July 5, 2019, Plaintiff states that he went to the dental department. There, he says that "the nurse," subsequently identified as Dental Assistant Richie, shouted at him and started hitting him in the back, and then pushed his head into the X-ray machine.

## II. The Motion for Summary Judgment

Nurse Clope and Dental Assistant Richie have filed a motion for summary judgment. This motion states that on July 1, 2019, Plaintiff was sent to an outside medical facility to assess his injuries after falling off his bunk. He was discharged at approximately 11:25 p.m. At around 1:49 a.m., the Defendants state that Plaintiff was seen by an offsite nurse on video, who performed an assessment and consulted with the provider on call. The provider gave orders for "start fall precautions" but no other new orders. The Defendants state that Plaintiff already had an order for Tylenol from his intake medication orders; this was a "keep on person" order, meaning Plaintiff had the medication available to him in his cell.

A few hours later, around 8:30 a.m., the Defendants state that Plaintiff was seen in person by Nurse Clope as a routine evaluation for a patient on the next day following an offsite transfer and return from a local emergency room. The Defendants state that Nurse Clope completed a focused

assessment, including taking his vital signs, evaluating his range of motion for his upper and extremities, neck and back, movement and gait, posture, peripheral pulses, and peripheral edema. All of her findings were within normal limits. She contacted the medical provider, Physician's Assistant Cynthia Goins, and Goins had no new orders and did not ask to see Plaintiff that day. The Defendants state that Plaintiff already had an upcoming appointment scheduled, but he became upset and argumentative with Nurse Clope and security had to escort him out of the medical department. This was his only encounter with Nurse Clope.

On July 5, 2019, the Defendants state that Richie gave him a panoramic dental X-ray, requiring him to step forward toward the X-ray machine, place his chin on a plate to properly position his head, and bite the proper place on a bite fork. The Defendants assert that Richie gave him verbal instructions to step closer to the machine, but when he failed to comply, she put her hand on his back to guide him forward so that his head was in the proper position; however, the Defendants state that she did not hit or push him in the head. The Defendants note that Plaintiff does not allege that he suffered any injury and did not seek medical care after the incident. He filed a grievance, but an investigation concluded that there was no evidence of wrongdoing.

In his response to the motion for summary judgment, Plaintiff states that he was not seen by an offsite nurse because Sgt. Bowen and the officers told the nurse that they did not have his chart, and the nurse said that he could not be seen without his chart. He contends that he was not seen by a provider at the Gurney Unit and that Nurse Clope did not examine him, but only asked him his name and told him that he did not have any medications ordered by the doctors at the hospital in Palestine. He states that she also told him that he could not see the provider and that he was not getting a bottom bunk, and then told him to leave and had him escorted out.

On July 17, 2019, Plaintiff states that he was sent back to the infirmary but Nurse Clope said that she did not want to see him and sent him to K-Pod, where he was housed until he was transferred off of the Gurney Unit.

Plaintiff states that although Nurse Clope claimed that she spoke to Physician's Assistant Goins and told him Goins did not order any new medications, in fact medications for him had been sent back from the hospital with Sgt. Bowen and the officers, so Goins did not have to order any new ones. He contends that Goins is lying to cover up what really happened and complains that he did not get to see a provider until he was transferred to the Byrd Unit.

Plaintiff acknowledges that Richie told him to move forward, but claims that he did not understand her the first time. Then, when he was about to move, she walked up behind him and started hitting him in the back. She also pushed his head into the X-ray machine. When he tried to say something, she told him to shut up. He complained to Officer Rollins and also to the dentists. Plaintiff contends that the Defendants are counting on his not being able to bring forth evidence and that they think they will "automatically win" because he is a prisoner. He complains that he was never examined by medical personnel at the Gurney Unit and refers to headnotes from a case holding that an incorrect diagnosis from a prison psychiatrist did not amount to deliberate indifference to the prisoner's serious medial needs. Neither Plaintiff's amended complaint nor his response to the motion are verified under penalty of perjury, and thus are not competent summary judgment evidence.

### III. The Summary Judgment Evidence

On July 1, 2019, an entry in the medical records from Palestine Regional Medical Center has four numbered lines, saying "D/L back to unit, ibuprofen 600 mg Q8H PRN [every 8 hours as needed] pain, fall precautions, Flexeril 10 g BID [twice a day] x 10 days." A handwritten note on the side, in a different handwriting, says "Mrs. Barry at Beto said that offender was not given these medications - they were ordered for the offender at unit. Need to check with provider to see what she prescribed the morning of 7/2/19 at followup." (Docket no. 35-4, p. 34).

An entry in the medical records signed by Nurse Tamara Fegley-Berry at 1:45 a.m., indicates that she saw Plaintiff by video and says that Plaintiff returned from Palestine Regional Medical Center with a complaint of pain to the left shoulder. The hospital gave discharge instructions for

fall precautions and recommended 800 [sic] mg of ibuprofen and 10 mg of flexeril. The nurse contacted Dr. Oyolu, who gave instructions to start fall precautions but issued no other others. (Docket no. 35-4, p. 43).

The next morning, Plaintiff saw Nurse Clope. She noted that his joints were normal and he had full range of motion in his arms and legs. He could bend forwards and backwards, his movements were normal, and his gait and posture were also normal. She contacted Physician's Assistant Goins, who said that Plaintiff did not meet the criteria for a bottom bunk, but he could discuss this at a physical exam scheduled for July 5. Plaintiff said that he was on Tylenol but that he was allergic to Motrin (ibuprofen). He had a prescription for Tylenol listed as KOP (keep on person). Nurse Clope quotes Plaintiff as saying that he was dreaming he was falling and then he was on the floor, and that he is short and needs a bottom bunk. However, she stated that he became very angry when told that he did not meet the requirements for a bottom bunk and could discuss this at his physical. She said Plaintiff stated "the doctor didn't say that, you just don't want me to have one," and then he left. (Docket no. 35-4, p. 52).

On July 9, 2019, the medical records show that Plaintiff had a mental health evaluation at the Gurney Unit. He had submitted a sick call request asking for a bottom bunk but was told that the mental health department could not give him one; however, he reported that the medical department has now given him a bottom bunk. (Docket no. 35-3, p. 75).

Plaintiff filed a sick call request on July 13 complaining that he was in pain and referring to his hospital visit on July 1, and the response was that he would be scheduled for sick call. ((Docket no. 35-3, p. 68). He was transferred to the Byrd Unit and on July 17, 2019, the medical records show that Plaintiff had an intake physical exam at the Byrd Unit. He reported shoulder pain and an inguinal hernia was found. (Docket no. 35-3, p. 60).

Plaintiff does not allege that he suffered any injuries as a result of the July 5, 2019 incident involving Dental Assistant Richie, and his medical records contain no indication that Plaintiff ever complained of or was treated for injuries arising from this incident. The summary judgment

evidence includes an affidavit from Richie in which she states that she gave Plaintiff verbal instructions to step closer to the X-ray machine, and when he did not comply, she placed her hand on his back to guide him forward so that his head was in the proper position. She stated that it is common for her to place her hand on a patient's back to guide them forward. Richie specifically denied hitting or pushing Plaintiff in the head or anywhere else on his body, or telling him to shut up.

**IV. Discussion**

    A. General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn from the evidence in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Burleson v. Texas Department of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Id.*, citing *Allen v. Rapides Parish School Board*, 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Hines v. Marshall*, slip op. no. 20-40444, 2021 U.S. App. LEXIS 29623, 2021 WL 4515392 (5th Cir., October 1, 2021). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Traveler's Indemnity Co.*, 465 F.3d 156, 164 (5th Cir.

2008). Instead, a party opposing summary judgment must identify specific evidence in the record which supports the challenged claims and articulate the precise manner in which the evidence supports the challenged claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show a genuine factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Nurse Clope

Plaintiff complains that Nurse Clope was deliberately indifferent to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997); *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). In order to show deliberate indifference, the prisoner must show: (1) objective exposure to a substantial risk of serious harm, (2) the defendant had subjective knowledge of this substantial risk, (3) the defendant denied or delayed the prisoner's medical treatment despite her knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

Disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference. *Id.*; *see also Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006), *citing Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Claims of negligence, medical malpractice, or that the treatment provided has not been as successful as the plaintiff would have liked are insufficient to set forth constitutional violations. *Gobert*, 463 F.3d at 346; *Norton*, 122 F.3d at 291. Likewise, the fact medical care given is not the best that money can buy, or that a dose of medication may occasionally be forgotten, does not

amount to deliberate indifference to serious medical needs. *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992).

In *Domino v. TDCJ-ID*, 239 F.3d 752 (5th Cir. 2001), the case whose headnotes were cited by Plaintiff in his response to the motion for summary judgment, a prisoner expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination. The prisoner committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

*Domino*, 239 F.3d at 756; *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

The summary judgment evidence shows that Nurse Clope saw Plaintiff on the morning of July 2, 2019. She determined that his joints, posture, gait, and range of motion were normal and contacted the provider, Physician's Assistant Cynthia Goins, for instructions. Goins advised Nurse Clope that Plaintiff did not meet the criteria for a bottom bunk, but Plaintiff became angry when she told him this. The medical records show that Plaintiff is allergic to NSAID's (non-steriodal anti-inflammatory drugs), a category which includes ibuprofen, naproxen, and aspirin, but Nurse Clope noted that Plaintiff already had a prescription for Tylenol, a different type of pain reliever.

Plaintiff has offered nothing to suggest that Nurse Clope refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct which would clearly evince a wanton disregard for any serious medical needs. As a licensed vocational nurse, Nurse Clope cannot prescribe any medications on her own. *See* Tex. Occ. Code §301.002(5) (vocational nursing does not include acts of medical diagnosis or the prescription of therapeutic or

corrective measures); *Thayer v. Adams*, 364 F.App'x 883, 2010 U.S. App. LEXIS 2392 (5th Cir., February 4, 2010) (noting that licensed vocational nurses "had no authority to prescribe drugs or embark on a different course of treatment.") The medical records do not show that Physician's Assistant Goins prescribed any medication for Plaintiff, and so Nurse Clope could not be deliberately indifferent in failing to give him any.

Plaintiff complains that Nurse Clope told him that she was aware that he was on trazadone and maybe he thought that was why he fell, but he was not going to get to see the doctor. Even assuming Plaintiff is correct, this statement fails to show deliberate indifference on Nurse Clope's part. The medical records do not show that Physician's Assistant Goins asked to see Plaintiff that day and that Plaintiff was scheduled for an examination a few days later. The fact that Physician's Assistant Goins did not ask to see Plaintiff does not show that Nurse Clope was deliberately indifferent to Plaintiff's serious medical needs

Plaintiff further alleged that Nurse Clope claimed to know who he was and that he had just come back from the hospital in Palestine, but that the hospital did not order any medication for him. Plaintiff asserted that he knew this was wrong because he saw the doctors in Palestine order muscle relaxers and pain medications for him, and the doctor gave the medication to the escorting officers, who then lost them or did not deliver them to the medical department. As noted above, a notation in the medical records indicates that according to a person named Mrs. Barry at the Beto Unit, Plaintiff was not given the medications at the hospital, but was to be ordered medication at the unit.

Even if Nurse Clope was mistaken in telling him that the hospital had not prescribed him any medication, Plaintiff has not shown that this amounts to deliberate indifference to his serious medical needs. The medical records indicate that Plaintiff was not given the medications at the hospital, and Nurse Clope's reliance on the medical records rather than Plaintiff's representation of what happened does not show deliberate indifference to Plaintiff's serious medical needs.

In any event, TDCJ policy provides that the unit provider has the final say on treatment and orders given by other doctors, such as the physicians at Palestine Regional Medical Center, are

9

recommendations only. *Moody v. Collier*, civil action no. 6:19cv56, 2020 U.S. Dist. LEXIS 182059, 2020 WL 5836729 (E.D.Tex., June 15, 2020), *Report adopted at* 2020 U.S. Dist. LEXIS 180079, 2020 WL 5816240 (E.D.Tex., September 30, 2020); *Cruz v. Archie*, civil action no. 5:12cv86, 2013 U.S. Dist. LEXIS 97234, 2013 WL 3544764 (E.D.Tex., July 12, 2013), *citing Williams v. Bearry*, 373 F.3d 1096, 2001 U.S. App. LEXIS 22630, 2001 WL 1085197 (5th Cir., September 7, 2001). Thus, any orders given at Palestine Regional Medical Center would have been recommendations and the unit provider, Physician's Assistant Goins, would have the final say. Because Goins did not order any new medications, Nurse Clope could not have given Plaintiff any. Plaintiff has not shown that Nurse Clope was deliberately indifferent to his serious medical needs, and her motion for summary judgment should be granted.

C. Dental Assistant Richie

In his amended complaint, Plaintiff states that Richie "hit me in my back in clear violation of the rules. This may have been retaliation. I don't know." He goes on to assert that "the dental nurse shouted at me and started hitting me in the back and pushed my head into the dental X-ray machine. I never met her before this occasion." Richie offers summary judgment evidence in the form of an affidavit stating that she placed her hand on his back to guide him forward, but that she did not hit or push him. Plaintiff does not offer any competent summary judgment evidence refuting this; in his unverified response to the motion for summary judgment, Plaintiff states that Richie told him to move forward, but he did not understand her. He claims that she then started hitting him in the back and pushed his head into the machine.

Plaintiff does not allege in his amended complaint or his response to the motion for summary judgment that he suffered any harm as a result of this incident, and the summary judgment evidence does not reflect that he ever sought or received any medical care as a result of the incident. The Fifth Circuit has consistently held that while a showing of "significant injury" is not required to maintain an Eighth Amendment use of force claim, the plaintiff must nonetheless show that he suffered some injury. *See, e.g.*, *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)

10

(spraying a fire extinguisher into an inmate's cell, resulting in no injuries, did not state a constitutional claim); *Perez v. Collier*, 2021 WL 4095263 (5th Cir., September 8, 2021) (noting that excessive force claims can be cognizable "as long as a plaintiff has suffered some injury," citing *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). Because Plaintiff has not alleged, much less shown, any injury, he cannot maintain an Eighth civil rights action for excessive force.

In addition to a showing of some injury, a plaintiff seeking to maintain an Eighth Amendment claim for excessive force must show that the defendant acted maliciously and sadistically for the very purpose of causing harm. *Hudson v. Palmer*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The summary judgment evidence wholly fails to show that Dental Assistant Richie acted maliciously and sadistically for the very purpose of causing harm to Plaintiff. His claim against her lacks merit on this basis as well.

### D. Qualified Immunity

Nurse Clope and Dental Assistant Richie have invoked the defense of qualified immunity. In order to overcome qualified immunity, a plaintiff must allege facts showing that the government official violated a constitutional right and that the right was clearly established at the time of the challenged conduct. *Laviage v. Fite*, 47 F.3d 402, 405 (5th Cir. 2022). The Fifth Circuit has explained as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
>
> Our qualified immunity inquiry is two-pronged. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.' *Id.* We can analyze the prongs in either order or resolve the case on a single prong. *Id.*

After stating that a right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that the defendant's conduct violated that right, and that there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that the conduct is definitively unlawful, the Fifth Circuit stated:

> When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her [i.e. the plaintiff's] favor, satisfying both qualified immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See id*.

*Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2020); *Byrd v. Harrell*, -- F.4th --, 2022 WL 3906602 (5th Cir., August 31, 2022) (when a government official has asserted qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643-44 (5th Cir. 2014). The summary judgment evidence demonstrates that Plaintiff has failed to meet his burden of overcoming Dental Assistant Richie's or Nurse Clope's qualified immunity, and his claims may be dismissed for this reason as well.

## RECOMMENDATION

It is accordingly recommended that the motion for summary judgment filed by the Defendants Nurse Clope and Dental Assistant Richie (docket no. 35) be granted and that the claims against these Defendants be dismissed with prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Ci. 2017).

So ORDERED and SIGNED this 3rd day of October, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE